Larry **HARTSFIELD, Trustee of the George Wright Lescher Trust, Plaintiff,**

v.

**Ann Madison Jeffords LESCHER, a/k/a Ann Jeffords Lescher, Defendant.**

No. H–C–88–113.

United States District Court, E.D. Arkansas, E.D.

Sept. 20, 1989.

Larry Hartsfield, Little Rock, Ark., for plaintiff.

W. Warner McNeely, III, Nashville, Tenn. and Thomas B. Smith, Wynne, Ark., for defendant.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

### INTRODUCTION

On September 2, 1988, Larry Hartsfield ("Trustee"), Trustee of the George *Wright* Lescher Trust ("Trust"), filed a *pro se* complaint in the Cross County, Arkansas Chancery Court seeking a declaration that Ann Madison Jeffords Lescher ("Ms. Lescher"), a/k/a Ann Jeffords Lescher, had no interest in real property located in Cross County, Arkansas and held in trust by the Trustee for the benefit of Ms. Lescher's ex-husband, George *Hamilton* Lescher,[1] and his twin brother, John Perry Lescher.[2] Ms. Lescher later removed the case to federal court.

On January 19, 1989, the Trustee filed the pending motion for summary judgment. His rather short motion, pared to its essence, was predicated upon two grounds. First, he maintained that on August 18, 1988, Mr. Lescher disclaimed any interest in the Trust. Alternatively, he alleged that the Trust contained a spendthrift provision which precluded a creditor, who he alleged Ms. Lescher was, from obtaining any part of Mr. Lescher's interest in the Trust.

On February 15, 1989, Ms. Lescher filed a response to the Trustee's motion. She maintained in her response that the reasons advanced by the Trustee were without merit:

First, [Mr. Lescher's] attempted "disclaimer" of his interest in the trust is void in that it constitutes a fraudulent transfer under Arkansas law. Second,

---

**1.** Throughout this Memorandum Opinion, Mr. Lescher's father, the Settlor of the Trust, will be identified by his full name, George *Wright* Lescher. The Court will identify Mr. Lescher by his full name, George *Hamilton* Lescher, only when it becomes necessary. When either man is identified by his full name, the Court will underline his middle name to call attention to his true identity.

**2.** The complaint at bar was amended on April 10, 1989 to add George *Hamilton* Lescher as a party plaintiff.

the spendthrift provision of the trust is no longer effective as to the creditors of [Mr. Lescher]. It was voided when he extended his interest in the trust and essentially created a new trust for his own benefit.

Ms. Lescher's Memorandum ("Memorandum") at 9. In connection with her response, Ms. Lescher also submitted the pending cross-motion for summary judgment. She argued that given certain allegedly undisputed facts, her ex-husband's interest in the Trust is subject to the judgment she obtained against him in a Tennessee state court.

The Court has thoroughly reviewed the motions submitted by the parties. That review persuades the Court to make the following disposition of these motions.

## SUMMARY JUDGMENT

"A motion for summary judgment should be granted if, in viewing the evidence in the light most favorable to the non-moving party, 'there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.'" *Nelson v. City of McGehee*, 876 F.2d 56, 57 (8th Cir.1989) (citation omitted). *See also* Fed.R.Civ.P. 56. The non-moving party, in opposing the motion, must be given the benefit of all favorable factual inferences. *See Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir.1987). When a motion for summary judgment is made and supported as provided for by Rule 56, the non-moving party may not " 'rest upon the mere allegations or denials of [its] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Nelson v. City of McGehee*, 876 F.2d at 57 (citation omitted). "Only disputes over facts that may affect the outcome of the lawsuit under the governing substantive law will properly preclude the entry of summary judgment." *Id.* (citation omitted).

## FACTS

Both parties have submitted statements of material facts as required by Local Rule 29. They acknowledge in these submissions that the material facts are not in dispute. Consequently, the Court takes the following facts from their submissions:

1. On November 5, 1973, Mr. and Ms. Lescher were granted an absolute divorce by the Davidson County, Tennessee Circuit Court. *See* Memorandum at 3. The decree granting their divorce directed Mr. Lescher to pay child support to his ex-wife for the benefit of their four children, all of whom have now reached the age of majority. *See* Memorandum at 3. In addition, the decree contained the following provision:

It is further ORDERED by the Court that 40% of any and all sums of money coming into [Mr. Lescher's] hands from any source whatsoever as far as any type of inheritance expectancy to certain real and personal property shall be for the use and benefit of the minor children of [Mr. and Ms. Lescher].

Final Decree at 2.

2. By his Last Will and Testament dated July 10, 1978, George *Wright* Lescher, the father of Mr. Lescher, created the Trust in question, the corpus of which was to come from the residuary of his estate, for the benefit of Mr. Lescher and his brother. *See* Memorandum at 3. The terms of the Trust provided that the sons were to receive monthly payments from the income generated by the corpus. *See* Memorandum at 4. The Trust, subject to one condition, was to terminate on August 23, 1988 with Mr. Lescher and his brother receiving equal shares of the Trust assets as residual beneficiaries. *See* Memorandum at 4. The condition which could extend the Trust is set out below:

B. If either son so elects, in writing and notarized, or is not "able" to make such an election, immediately preceding the above-stipulated time of termination of the Trust, his share of the Trust shall be extended, not terminated, and shall be extended for such period as he elects or as the Trustee determines, in consultation with and affirmed in writing by, those persons surviving (including the other son) listed in Item I–C, to be in his best interests, as the case may be....

Trust at 19.

3. On December 16, 1980, George *Wright* Lescher died. *See* Memorandum at 3.

4. On December 22, 1980, the Will of George *Wright* Lescher was filed and probated in the Probate Court of Davidson County, Tennessee. *See* Memorandum at 3–4.

5. During 1982, Ms. Lescher instituted proceedings in the Davidson County, Tennessee Circuit Court against Mr. Lescher for back child support. *See* Memorandum at 5. At the conclusion of those proceedings, and following an appeal to the Tennessee Court of Appeals which was reported at *Lescher v. Lescher,* 679 S.W.2d 463 (Tenn.App.1984), the court entered an award for Ms. Lescher. *See* Memorandum at 5. This judgment required Mr. Lescher to pay his ex-wife $44,801.01, plus forty percent of all disbursements he might receive from the Trust. *See* Memorandum at 5. This amount was not, however, to exceed $251,965.00. *See* Memorandum at 5. In addition, Mr. Lescher was ordered to pay Ms. Lescher $982.50 a month for the support of their child, Benjamin Lescher, until the child reached the age of majority on August 19, 1988. *See* Memorandum at 5.

6. On July 15, 1985, the estate of George *Wright* Lescher was settled. *See* Memorandum at 4. At that time, all remaining assets of the estate were transferred to the Trust. *See* Memorandum at 4. The Primary remaining asset was a piece of real property located in Cross County, Arkansas. *See* Memorandum at 4. A percentage of the income generated by this property was paid by the Trustee to Mr. Lescher. *See* Memorandum at 4.

7. On February 17, 1988, the Trustee entered into a contract with Eaton & Morey Farms for the sale of the property. *See* Mr. Lescher's Statement of Uncontested Facts ("Statement") at 1.

8. On May 6, 1988, Ms. Lescher registered her judgment in the Cross County, Arkansas Circuit Court. *See* Memorandum at 5. Notice of this registration was served upon Mr. Lescher. *See* Memorandum at 5. Thereafter, on July 8, 1988, Writs of Execution were served on Mr. Lescher and the Trustee. *See* Memorandum at 5. The effect of these writs was to temporarily block the sale of the real property. *See* Memorandum at 5–6.

9. On August 18, 1988, Mr. Lescher executed a document disclaiming any interest in the proceeds from the Trust. *See* Statement at 2–3. This document was recorded on August 22, 1988. *See* Statement at 3.

10. On the same day Mr. Lescher executed the disclaimer, he also executed, along with his brother,[3] a document purporting to extend the terms of the Trust beyond its expiration date, August 23, 1988. *See* Statement at 2. The pertinent portion of that document is set out below:

> In accordance with Article IX-b of the Last Will and Testament of George *Wright* Lescher the document by which the George *Wright* Lescher Trust is created and for which you are serving as Trustee, I hereby elect to extend the term of the George *Wright* Lescher Trust for an indefinite period of time to be determined by me, at my discretion, whereupon I shall advise you in writing.

Exhibit I to Trustee's Complaint.

11. These events culminated in the filing of this lawsuit in the Cross County, Arkansas Chancery Court on September 2, 1988.

ANALYSIS

PREFACE. In resolving the case at bar, the Court must address several issues. The Court finds, as a preliminary matter, that the first issue to be addressed is the law to be applied to the remaining issues.

LAW TO BE APPLIED. The briefs submitted by the parties on this issue are wholly inadequate. The brief submitted by the Trustee completely ignores the issue. The brief submitted by Ms. Lescher at least attempts to address this issue, but it is ultimately confusing.[4] Thus, the Court

---

3. Although he did not execute the same document, the file establishes that John Perry Lescher executed an identical document extending the terms of the Trust. *See* Exhibit H to Trustee's Complaint.

4. For example, Ms. Lescher first asks the Court to apply Arkansas law on the issue of whether Mr. Lescher's attempted disclaimer was a fraudulent transfer. *See* Memorandum at 9. She later states, however, that Tennessee law should

must resolve this issue without the benefit of the parties' input.

The Court, in resolving the issue, must first look to the express intent, if any, of the Settlor, George *Wright* Lescher. *See* Restatement (Second) of Conflict of Laws § 279 comment b (1971) (if settlor provides that the local law of some other state shall be applied to govern the administration of the trust, the court of the situs would apply the designated law as to issues which can be controlled by the terms of the trust). The Court has examined his will for an express designation of the law to be applied, but that document is silent. Thus, the Court must look elsewhere.

■ The Court has searched Arkansas law on this issue but can find little authority specifically addressing the matter. However, the prevailing view, and the one this Court will follow, appears to be accurately set forth as follows:

§ 279. Administration of Trust of Land. The administration of a trust of an interest in land is determined by the law that would be applied by the courts of the situs as long as the land remains subject to the trust.

Restatement (Second) of Conflict of Laws § 279 (1971). This view is apparently shared by Dr. Robert A. Leflar. *See* R. Leflar, L. McDougal & R. Felix, American Conflicts Law, 191–92 (4th ed. 1986). Consequently, because this case concerns the administration of a trust of real property located in Arkansas, the law of this state will be applied to the remaining issues.

DISCLAIMER. Initially, the Trustee maintains that Mr. Lescher has no interest in the Trust for Ms. Lescher to attach. It is the Trustee's position that Mr. Lescher disclaimed any interest in the Trust on August 18, 1988.[5] The Court finds, however, that while he attempted to disclaim his interest, his attempt was not effective.

■ First, it is elementary that when the terms of a trust preclude a beneficiary from alienating his interest in the trust, "[he] can not release his interest after he has once accepted it." A. Scott & W. Fratcher, The Law of Trusts, § 337.7 (4th ed. 1989). The parties to this proceeding agree that the Trust in question contains a spendthrift provision. Thus, Mr. Lescher is precluded from alienating his interest. The Court finds that he has been receiving payments from the Trustee and has therefore accepted an interest in the Trust. Because he has accepted that interest, he can not now disclaim the interest.

■ And second, A.C.A. § 28–2–107 provides the following:

Except as provided in subsection (c) [which is not relevant here], if the property or interest as devolved to the disclaimant under a testamentary instrument or by the laws of intestacy, the disclaimer shall be delivered, as to a present interest, not later than nine (9) months after the death of the deceased owner or deceased donee of a power of appointment and, as to a future interest, not later than nine (9) months after the event determining that the taker of the property or interest has become finally ascertained and his interest is indefeasibly vested.

Thus, in order for the disclaimer executed by Mr. Lescher on August 18, 1988 to have been effective, it must have been delivered not later than nine months after his father's death on December 16, 1980, or roughly September 16, 1981. Because the disclaimer was not delivered within that period, it was ineffective. Mr. Lescher therefore can not now maintain that he has no interest in the Trust.[6]

EXTENSION. The other issue before the Court involves the validity of the attempt by the Beneficiaries to extend the Trust past the date of termination originally established by the Settlor. It is the

be applied on the issue of the validity of the disclaimer. *See* Memorandum at 13 n. 2.

**5.** The Trustee later apparently abandoned this claim, calling it "irrelevant." Memorandum in Opposition to Defendant's Cross Motion for Summary Judgment at 4.

**6.** The Court does not decide whether the attempted disclaimer was an act of intentional fraud by Mr. Lescher.

position of the Trustee that George *Wright* Lescher intended for his sons to be able to extend the Trust past August 23, 1988, if either son so elected. The Trustee maintains that Mr. Lescher and his brother executed documents on August 18, 1988 exercising that right, thereby ensuring that they continued to benefit from the protection of the spendthrift provision. Ms. Lescher alleges, however, that while the Trust may in fact be, and actually was, extended, the spendthrift provision is now a "nullity." Memorandum at 16.

On July [actually August] 18, 1988, both [Mr. Lescher] and John Lescher executed documents extending the [T]rust as to their respective interests therein. Both extensions were for an indefinite period. It is abundantly clear, therefore, that the only reason the [T]rust exists at all today as to [Mr. Lescher's] interest therein, is because of the overt acts of [Mr. Lescher]. [Mr. Lescher] is, therefore, now the settlor of the Trust as it pertains to his interest. While there is nothing improper as to this situation, it does render the spendthrift provision of the [T]rust a nullity.

Memorandum at 15–16.

The briefs submitted by the parties on this point are again less than adequate. The brief filed by the Trustee in support of his motion cites no relevant case. His brief in response to the motion filed by Ms. Lescher, while making a crucial assertion, *i.e.*, "... a review of the cases from virtually all jurisdictions does not reveal the defeat of a spendthrift provision on the basis that the trustee has the right to extend the term of a spendthrift trust," Memorandum in Opposition to Defendant's Cross–Motion for Summary Judgment at 3, does not cite a single case supporting the proposition. The brief filed by Ms. Lescher cites several cases which are of some assistance to the Court, but these cases are not dispositive of the issue at bar. Thus, the Court must again resolve an issue without substantial assistance from the parties.

At the outset, the Court should note that the validity of the spendthrift provision prior to the attempted extension of the Trust on August 18, 1988 is not in question. Moreover, it is undisputed that the Trust in some way continues to this day. It is hotly contested, however, whether the spendthrift provision could be validly extended by the Beneficiaries. Thus, the essence of this dispute involves the validity of the Trust provision giving the Beneficiaries the right to extend the spendthrift provision past the date of termination originally established by the Settlor.

■ The Court begins with the proposition that spendthrift provisions have long been recognized in the State of Arkansas. *See Bowlin v. Citizens Bank & Trust Co.*, 131 Ark. 97, 198 S.W. 288 (1917). The essence of such a provision is to effectuate the settlor's intention of protecting the corpus, and if desired, the income therefrom, from creditors by placing a restraint on the beneficiary's ability to alienate his interest. *See* A. Scott & W. Fratcher, The Law of Trusts, § 151 (4th ed. 1989). *See also Cotham v. First National Bank of Hot Springs*, 287 Ark. 167, 697 S.W.2d 101 (1985) (spendthrift provision created when settlor's purpose was to impound the corpus in such a way that the beneficiary could not receive it, except at certain intervals). If, however, the beneficiary is in some way entitled to receive the corpus immediately or to call for it at any time, the restraint on alienation is invalid. *See* Restatement (Second) of Trusts, § 153(2) comment c (1959).

■ In this case, the Trust, as originally created, was to terminate on August 23, 1988. The Trust provided that the Beneficiaries could do nothing to compel the Trustee to convey the corpus to them immediately or at some later time. On August 18, 1988, however, they executed identical documents extending the Trust. These documents contained the following declaration: "..., I hereby elect to extend the term of the George *Wright* Lescher Trust for an indefinite period of time to be determined *by me, at my discretion*, whereupon I shall advise you [the Trustee] in writing." Exhibits H and I to Trustee's Complaint. [Emphasis added]. This declaration can have only one reasonable meaning: the Beneficiaries now control when they will receive the corpus. This critical fact distinguishes the case at bar from the cases reviewed, but not cited, by the Trust-

ee which stand for the proposition that a spendthrift provision will not be defeated merely because the *trustee* has the right to extend the term of a spendthrift provision. The Beneficiaries can not enjoy the protection of the spendthrift provision while dictating when they should receive the corpus. Thus, while the corpus is now held in trust for them by the Trustee, the spendthrift provision is invalid.

In summary, the Court finds that the material facts are not in dispute and this case may be resolved on a motion for summary judgment. The Court also finds, when applying Arkansas law, that the attempted disclaimer executed by Mr. Lescher was ineffective. In addition, the Court finds that the Trust could be extended past the date of termination originally established by the Settlor but that the spendthrift provision is no longer valid. These findings compel the Court to grant the motion for summary judgment submitted by Ms. Lescher. The Writ of Execution filed by Ms. Lescher will not be disturbed. Ms. Lescher is ordered to submit a proposed judgment, approved as to form by the Trustee, for filing in this case. This judgment should be submitted to the Court by the close of business on October 5, 1989.

IT IS SO ORDERED this 20th day of September, 1989.